### Richmond

COMMONWEALTH OF VIRGINIA *ex rel.*

BRENDA EVANS

v.

ROY HARRISON

No. 0995-85

Decided September 1, 1987

COUNSEL

Cynthia D. Walicki, Assistant Commonwealth's Attorney, on brief, for appellant.

Robert K. Thompson, for appellee.

OPINION

**BARROW, J.** — This appeal of a dismissal of a Uniform Reciprocal Enforcement of Support Act petition questions what founda-

tion is required for the introduction of the results of the human leukocyte antigen (HLA) blood grouping tests for the purpose of determining paternity. The trial court refused to admit the results of such tests because the person who drew the blood to be tested was not called to identify the persons from whom the blood was taken. We conclude that the testimony of this person was not required and reverse.

At trial the mother and an expert in the field of immunogenetics testified. The mother said that she and the putative father had cohabited for approximately seven months prior to the child's birth and that she had sexual intercourse only with him during the period of conception. The expert was the Director of the Immunogenetics Typing Laboratory of the University of Alabama at Birmingham who qualified as an expert in the field of immunogenetics. He received the blood samples, tested them and obtained the results of the HLA blood grouping tests, but the trial court refused to admit the test results because the expert was unable to testify from his personal observation that the blood he tested was the same blood as that taken from the putative father, the mother and the child.

■ Code § 20-61.2 governs the admissibility of HLA blood grouping tests in paternity actions. It provides that the "results of such blood grouping tests shall be admitted in evidence when offered by a duly licensed and certified practicing physician or other qualified scientist."[1] This language is unambiguous. The test results are admissible upon being offered by a properly qualified expert without testimonial identification of the blood sample by the person who took the blood. There are sound reasons for concluding that this construction is the meaning intended by the General Assembly.

---

[1] The full text of Code § 20-61.2 in effect at the time of trial read:

In the trial of any matter in any court in which the question of paternity arises, regardless of any presumptions with respect to paternity, the court before whom the matter may be brought, upon motion of either party, may direct and order that the alleged father, the mother and child shall submit to blood grouping tests. The court, in its discretion, may require the person requesting such blood grouping tests to pay the cost thereof. The results of such blood grouping tests shall be admitted in evidence when offered by a duly licensed and certified practicing physician or other qualified scientist.

First, blood grouping tests are replicable. *See Houghton v. Houghton*, 179 Neb. 275, ___, 137 N.W.2d 861, 865 (1965); *Baron v. Dyslin*, 279 S.C. 475, ___, 309 S.E.2d 767, 768 (Ct. App. 1983). Since the tests measure permanent genetic characteristics, they may be duplicated at any time in the future. This contrasts with a blood alcohol test which measures a temporary condition which cannot be duplicated. If any question of HLA blood tests' reliability is raised, it may be resolved simply by repeating the tests.

In addition, this provision for admissibility is applicable only to court ordered tests. Since the tests are ordered by the court, the parties are assured of having notice of the proposed order before it is entered, giving each an opportunity to be heard prior to its entry. The time and place for taking the blood samples can be established so that each party can be present when the blood of each participant is drawn, assuring that the blood samples are taken from the proper subjects. This also gives each party a voice in the selection of the laboratories which are to take and test the blood samples, assuring that the laboratories are independent.

In this case the testing was ordered by the Juvenile and Domestic Relations District Court on January 27, 1984; the report of the results was filed with the court on July 12, 1984; and the trial occurred on May 9, 1985. The appellee had an opportunity to be present when the blood samples of the other participants were taken. Also, the results of the tests were available to him well in advance of the trial, and he could have sought additional testing if these results were suspect.

█ Furthermore, Code § 20-61.2 should be read in conjunction with Code § 8.01-401.1. The latter provision allows an expert witness to testify and render an opinion based upon circumstances or data "made known to or perceived by" him, and the "facts, circumstances, or data," which he relies upon, need not be admissible in evidence if of a type "normally relied upon by others in the particular field of expertise in forming opinions." Code § 20-61.2 accomplishes essentially the same result by allowing the results of blood grouping tests to be admitted in evidence when "offered by a . . . qualified scientist."

Finally, this reading of Code § 20-61.2 is consistent with the current approach to the admissibility of scientific evidence. The

Federal Rules of Evidence, after which Code § 8.01-401.1 is modeled, allows an expert to rely on facts or data made known to him, and such facts or data need not be admissible in evidence if of the type reasonably relied upon by experts in the field. Fed. R. Evid. 703. The notes of the Advisory Committee proposing this rule explain its rationale:

> [A] physician in his own practice bases his diagnosis on information from numerous sources and of considerable variety, including statements by patients and relatives, reports and opinions from nurses, technicians and other doctors, hospital records, and X rays. Most of them are admissible in evidence, but only with the expenditure of substantial time in producing and examining various authenticating witnesses. The physician makes life-and-death decisions in reliance upon them. His validation, expertly performed and subject to cross-examination, ought to suffice for judicial purposes.

Fed. R. Evid. 703 Advisory Committee's Note. This same rationale supports the General Assembly's decision to allow HLA blood tests to be admissible when offered by a properly qualified expert.

██ When read together, Code §§ 8.01-401.1 and 20-61.2 allow the admission of the results of HLA blood tests and a properly qualified expert's opinion concerning the results. Once the expert has testified that the blood samples tested were those of the parties involved, that his conclusion is based upon facts, circumstances or data made known to or perceived by him, and normally relied upon by others in his field of expertise, the test results and his expert opinion are prima facie admissible.

██ The expert's testimony, however, may be controverted. The party opposing the admissibility of the test results may attempt to establish that experts in the field do not, in fact, normally rely on data of the type relied upon by the expert in framing his opinion. This fact may be established by independent evidence or brought out upon cross-examination of the expert. The opponent of the evidence may also seek to establish, by independent evidence or upon cross-examination, that the blood samples upon which the opinion is based, were not, in fact, those of the parties involved.

█ The sufficiency of the evidence of each of these factors is subject to review by the trial court and the fact finder. If either of these factors is not established and reasonable men would not differ over this conclusion, the trial court should refuse to admit evidence of the test results or, if already admitted, should strike that evidence and instruct the jury to disregard it. On the other hand, if the evidence of both of these factors is such that reasonable men would differ, this affects the weight of the evidence and should be resolved by the fact finder.

An opponent of this evidence need not wait until after the evidence has been admitted to assert a challenge. He may raise it prior to trial by a motion to exclude the evidence or at trial by examining the expert, out of the presence of the jury, prior to a ruling on the admissibility of the test results. Furthermore, the proponent of the evidence may be required to make a "prior disclosure of the underlying facts or data" relied on by the expert if the opponent of the evidence objects to admissibility of the test results or the expert's opinion. *See* Code § 8.01-401.1.

Our construction of Code § 20-61.2 does not conflict with the Supreme Court's opinion in *Bass v. Commonwealth*, 212 Va. 699, 187 S.E.2d 188 (1972). In *Bass*, a criminal trial for rape, the Court held that it was necessary to identify the "substance [spermatozoa] tested with the person from whom obtained" before the results of the tests are admissible. *Id.* at 700, 187 S.E.2d at 189. *Bass* addresses a different code provision, former Code § 19.1-45, which simply permitted records of the Chief Medical Examiner to "be received in evidence." Code § 20-61.2 goes further and says that blood grouping tests are to be admitted "when offered by a duly licensed . . . physician or other . . . scientist." The test involved in *Bass* did not have the safeguards inherent in replicable, court-ordered tests. More importantly, we do not intend to eliminate the need to identify the blood sample as that of the person from whom it was taken; instead, we decide only that Code § 20-61.2 permits this to be accomplished through means other than the testimony of the technician who took the blood sample.[2]

In this case the mother's attorney represented to the trial court that the expert "had with him all the original paperwork which

---

[2] Nor do we intend to suggest that any other usual prerequisites to the admissibility of an expert's testimony are no longer required.

accompanied the blood vials, including pictures of [the] parties, their fingerprints, as well as documents and affidavits purporting to show the chain of custody from the technician drawing the blood samples to . . . [Federal Express] for shipment and then to the immunogenetics typing laboratory . . . ." The putative father, had the court allowed it, could have examined this material and cross-examined the expert on the basis of his opinion, including his reliance on the identity of the blood samples. The trial court would then have been able to determine the sufficiency of the expert's identification of the blood samples and weight to give the expert's opinion.

The replicability of blood grouping tests, the safeguards available when they are ordered by the court and the putative father's opportunity to challenge the expert's determination of the identity of the donors of the blood samples persuade us that the trial court erred in requiring the testimony of the person who drew the blood as a prerequisite to admitting the results of the HLA blood grouping tests. The judgment of the court is, therefore, reversed, and the case is remanded for further proceedings consistent with this opinion.

*Reversed and remanded.*

Koontz, C.J., Baker, J., Cole, J., Duff, J., Hodges, J., Keenan, J., and Moon, J., concurred.